IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**RICHARD MARTIN,**

**Plaintiff,**

**vs.**

**JOBO'S, INC., d/b/a BJ Roosters, ROBERT HAMILL, and JOHN MOLINARI,**

**Defendants.**

Civil Action No. 1:13-cv-04242-RWS

**PLAINTIFFS' TRIAL BRIEF**

Plaintiff Richard Martin, by and through undersigned counsel and pursuant to Court Order, hereby presents his trial brief:

1.     **Introduction and Plaintiff's Claim**

This is a Fair Labor Standards Action minimum wage and overtime case.

Plaintiff is a former bartender at BJ Roosters, an Atlanta bar and nightclub.

Defendants are his former employers, Jobo's, Inc. d/b/a BJ Roosters, Robert

Hamill, and John Molinari.

The Parties have stipulated that subject matter jurisdiction and venue are proper.[1] In addition, the Parties have stipulated that Jobo's, Inc., is a covered enterprise under the FLSA by way of its revenue,[2] and the fact that it has two or more employees engaged in commerce or handling materials that have moved in commerce.[3]

The court will face four major questions:

- Plaintiff's dates of employment at BJ Roosters (Plaintiff alleges he began working in 2010; Defendants allege that he began working only in 2013);

- Whether "cleaning fees" paid by Plaintiff and other BJ Roosters bartenders were improper "kickbacks" (29 C.F.R. 531.35) that violated the FLSA's "free and clear" requirement and rendered the FLSA's tip credit provision inapplicable;

- Whether Defendant Molinari was Plaintiff's "employer" under the FLSA (Defendants Jobo's and Hamill do not dispute that they were Plaintiff's employers during the period of his employment);

---

[1] PreTrial Order, Attachment E, ¶¶1-2.

[2] Id, ¶7.

[3] Id, ¶¶4-6.

- The number of hours worked by Plaintiff in each relevant pay period.

## 2.   Minimum Wage under the FLSA

The minimum wage is $7.25 per hour as of July 24, 2009.[4] "The elements that must be shown [for an FLSA claim] are simply a failure to pay overtime compensation and/or minimum wages to covered employees and/or failure to keep payroll records in accordance with the Act."[5]

## 3.   Overtime under the FLSA

The Fair Labor Standards Act provides:

> No employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce . . . for a workweek longer than forty hours . . . unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.[6]

"In order to prevail on [an FLSA claim, a] . . .Plaintiff[] must prove that [he] suffered or [was] permitted to work [overtime] without compensation."[7] To prove

---

[4] *Id.*

[5] *Secretary of Labor v. Labbe*, 2008 WL 4787133, at *1 (11th Cir. 2008).

[6] 29 U.S.C. § 207(a)(2)(C).

[7] *Allen v. Bd. of Pub. Educ. for Bibb Cty*., 495 F.3d 1306, 1314-15 (11th Cir. 2007) (internal citations omitted). *See* 29 U.S.C. § 203(g) ("Employ means to sufer or permit to work").

that he performed work for which he was not properly compensated, Plaintiff must show that his employers had knowledge, either actual or constructive, of his uncompensated overtime work.[8] To suffer or permit work simply means that the employer knows or has reason to know that work is being performed.[9]

The FLSA overtime pay premium is based on a "regular rate."[10] The "regular rate" is the hourly rate paid to an employee for the normal non-overtime work period.

### 4.    No Contractual Waiver

An employee or an employer cannot waive or contractually abridge any of the provisions of the Fair Labor Standards Act.[11] Thus, it is immaterial whether or not Plaintiff agreed to work for Defendants on a tips-only basis during 2010–2012. "[T]he purposes of the Act require that it be applied even to those who would decline its protections."[12]

---

[8] *Pforr v. Food Lion, Inc.*, 851 F.2d 106 (4th Cir. 1988).
[9] *Gulf King Shrimp v. Wirtz*, 407 F.2d 508 (5th Cir. 1969).
[10] 29 USC § 207 (a)(1).
[11] *Lee v. Flightsafety Servs. Corp.*, 20 F.3d 428, 432 (11th Cir. 1994); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1983).
[12] *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 301, 302 105 S. Ct. 1953 (1985)

### 5.   Employer under the Act

As to whether Defendant Molinari is statutory employer, the FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."[13] The Supreme Court has emphasized the "expansiveness" of the FLSA's definition of employer.[14] "Above and beyond the plain language, moreover, the remedial nature of the statute further warrants an expansive interpretation of its provisions so that they will have 'the widest possible impact in the national economy.' "[15]

"The FLSA contemplates there being several simultaneous employers who may be responsible for compliance with the FLSA."[16] As the Eleventh Circuit has noted, "'[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.' "[17]

*Corporate officers* have "operational control" when they are "'*involved in the day-to-day operation* or have some direct responsibility for the supervision of the

---

[13] 29 U.S.C. § 203(d).
[14] *Falk v. Brennan*, 414 U.S. 190, 195, 94 S. Ct. 427 (1973).
[15] *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (quoting *Carter v. Dutchess Comm. College*, 735 F.2d 8, 12 (2d Cir. 1984)).
[16] *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991).
[17] *Wargo*, 803 F.2d at 637– 38 (11th Cir. 1986).

employee.' "[18] Moreover, *even occasional participation in the day-to-day operations is sufficient for a reasonable jury to find "employer" status*. In *Donovan v. Janitorial Servs., Inc.*, the Fifth Circuit stated that occasional control does not diminish the significance of the existence of such control).[19] The Eleventh Circuit has since explicitly followed the Fifth Circuit in *Olivas v. A Little Havana Check Cash, Inc.*,[20] where it stated:

> [A] reasonable person could conclude that Mrs. Rodriguez was in charge of day-to-day operations and exercised direct supervision of the employees, particularly when Mr. Rodriguez was out of the country, so as to establish "employer" status.[21]

In *Olivas*, Mrs. Rodriguez (the alleged co-employer), was a signatory of the bank account, she gave instructions, answered questions and resolved problems, the employees were instructed to call her when her husband was out of the country, she would watch the work in progress, she spoke with the Plaintiff when hired, and she was familiar with the bank account balances.[22] When combined with their

---

[18] *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008) (quoting *Wargo*, 803 F.2d at 638) (emphasis added).
[19] 672 F.2d 528, 531 (5th Cir. 1982).
[20] 324 Fed. App'x 839, 845–846 (11th Cir. 2009).
[21] *Id.* at 845–846 (citing *Donovan*).
[22] *Id.*, at 845–846; *see also Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1314 (11th 2013) (Because a "reasonable jury could have found that [the individuals] exercised control over "significant aspects of [the company's] day-to-day functions, including compensation of employees or other matters in relation to

substantial ownership interests, this suggested that [the individuals] had sufficient control of the company's financial affairs to "cause the corporation to compensate (or not to compensate) employees in accordance with the FLSA.")[23]

As set out above, Defendant Molinari's status as an "employer" under the FLSA is in dispute in this case. As in *Donovan* and *Olivias*, Molinari is a corporate officer who has an integral role in the operation of BJ Roosters. While his work may have been somewhat more limited than Hamill's, it was of the same type and was regular: he supervised employees in the bar on a regular basis, he participated in hiring and firing decisions, he resolved problems with customers, and he filled in for Hamill when Hamill was on vacation. This level of authority and participation in the day-to-day operation of BJ Roosters is more than sufficient to establish individual "employer" status under the FLSA.

## 6.   Record Keeping and Burden of Proof as to Hours Worked

Section 11(c) of the FLSA requires employers to "make, keep and preserve records" of employees and of their "wages, hours, and other conditions and practices of employment" in accordance with regulations adopted by the Wage and

---

an employee." [*Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150 (11th 2008)] (quoting *Wargo*, 803 F.2d at 638).
[23] *Id.*

Hour Division.[24] Pursuant to the record keeping regulations set out in 29 C.F.R., Part 516, employers must maintain certain records for both exempt and nonexempt employees. As to those employees subject to minimum wage and overtime, payroll records must be kept.[25]

"[An] FLSA plaintiff bears the burden of proving that he or she worked overtime without compensation."[26] "[A]n employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then becomes the employer's, and it must bring forth either evidence of the precise amount of work performed or evidence to negate the reasonableness of the inference to be drawn from the employee's evidence."[27] If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate."[28]

---

[24] 29 U.S.C. § 211(c).
[25] 29 C.F.R. 516.2
[26] *Allen v. Bd. of Pub. Educ. for Bibb Cty*., 495 F.3d 1306, 1315 (11th Cir. 2007) (quoting *Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 687 (1946)).
[27] *Id*. at 1316 (internal quotation marks omitted).
[28] *Donovan v. New Floridian Hotel, Inc*., 676 F.2d 468, 471 (11th Cir. Fla. 1982) (quoting *Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 66 S. Ct. 1187 (1946); *see also Jones v. Carswell*, 2012 U.S. Dist. Lexis 6042 (S.D. Fla. 2012)

In this case, Defendants have failed to make, keep and preserve relevant records of their employees' and of their wages, hours, and other conditions and practices of employment, as required by federal law. They can produce no schedules showing the hours worked by Martin or any other bartenders prior to late 2013. Defendants have produced certain payroll and tax documents, but the evidence at trial will show that on approximately half of BJ Roosters' bartenders were ever placed on payroll prior to January 2013, when the number of bartenders on payroll inexplicably doubled. Based on the testimony of Defendants' own current employees, those tax and payroll documents will be shown to be false and incomplete.

At trial, Plaintiff will produce sufficient evidence to show the amount and extent of his work from 2010 through 2012 to permit as a matter of just and reasonable inference.

7.     **Kickbacks**

29 C.F.R. § 531.35 provides:

. . . "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and

---

("Testimony that supported a conclusion the time sheets were inaccurate and/or incomplete. This is not a case where an employee made an unsubstantiated allegation that he worked uncompensated overtime.").

unconditionally or "free and clear." **The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee.[29]**

When an employer takes any portion of a tipped employee's tips to meet its minimum wage obligations, the tipped employees are entitled to the full minimum wage for every hour at issue.[30] Once the tip credit has been destroyed, the employer's back wage liability is not retroactively reduced by the tips actually received by the employee.[31]

In *Reich v. Priba Corp*., where a nightclub employed dancers and paid them no wages, the Northern District of Texas held that the club's practice of collecting a "tip out fee" violated the FLSA because the deduction further reduced the dancers' wages below the minimum wage.[32] Thus, to fully compensate the plaintiff, the defendant employer was required to pay the full

---

[29] 29 C.F.R. § 531.35 (emphasis added).
[30] *Barcellona v. Tiffany English Pub, Inc*., 597 F.2d 464, 467–68 (5th Cir. 1979)
[31] *Reich v. Chez Robert, Inc*., 28 F.3d 401 (3d Cir. 1994); *see also Martin v. Tango's Restaurant, Inc*., 969 F.2d 1319 (1st Cir. 1992) (no retroactive application of the tip credit); *Richard v. Marriott Corp*., 549 F.2d 303 (4th Cir. 1977) (same); *Bonham v. Copper Cellar Corp*., 476 F. Supp. 98 (E.D. Tenn. 1979) (same).
[32] 890 F. Supp. 586, 595 (N.D. Tex. 1995) (citing *Reich v. Circle C. Investments, Inc*., 998 F.2d 324, 330 (5th Cir. 1993).

minimum wage for all time worked, in addition to all fees collected.[33] Other district courts have reached the same conclusion.[34]

In *Reich*, the court also held that fees improperly imposed on the entertainers for processing credit card payments was also a violation of the FLSA, reasoning that "[t]he FLSA does not permit an employer to transfer to its employees the responsibility for the expenses of carrying on an enterprise."[35]

In this case, the evidence at trial will show that every time that Plaintiff worked on a night bartending shift (typically, ever Sunday), he was required to pay $5.00 to Defendants as a "cleaning fee." During the portion of Plaintiff's employment that Defendants actually paid him wages for his bartending work, Defendants' requirement that Plaintiff pay this fee violated the "tip credit" provision because it rendered Plaintiff's actual rate of pay less than the minimum wage as modified by the tip credit, thus rendering the tip credit inapplicable.

---

[33] *Id.*
[34] *See, e.g., Hart v. Rick's Cabaret Int'l, Inc*., 60 F. Supp. 3d 447, 477 (S.D.N.Y. 2014).
[35] 890 F. Supp. at 595.

During the period of Plaintiff's employment in which he was paid no hourly wages at all for his bartending work, the imposition of a $5.00 cleaning fee created, in effect, a negative hourly rate. Defendants' minimum wage obligations will not be satisfied until they have paid Plaintiff the full minimum wage, *plus* the additional $5.00 in fees he paid each week.

## 8.    Tip-Credit

While the standard minimum wage for employees is currently $7.25 per hour, the FLSA permits "tipped employees" to be paid a lower minimum wage and for the employer to claim a "tip credit" reflecting the fact that the employee will make up the difference between the lower direct pay rate and the higher minimum wage rate in tips.[36] Pursuant to the FLSA, a " '[t]ipped employee' means any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips."[37] The tip-credit's history and requirements are set out in *Schaefer v. P.F. Chang China Bistro, Inc.*:

> From introduction of the tip credit provisions in 1966 through 1996, Congress set the amounts for the minimum employer cash wage and tip credit as a percentage of the minimum wage, ranging from 40% to 60%. **The 1996 FLSA amendments changed the tip credit provisions to set the employer's statutory minimum cash wage obligation to a dollar amount**

---

[36] 29 U.S.C. § 203(m).
[37] 29 U.S.C. § 203(t).

**($2.13 per hour)**, rather than a percentage of the minimum wage. *See* Pub. L. No. 104-188, § 2105, 110 Stat. 1755, 1928-29. The maximum tip credit thereafter became the difference between $2.13 and the federal minimum wage. *Id*. Thus, the tip credit provision of the FLSA, § 203(m), allows employers to pay tipped employees $2.13 per hour if the employees' tips suffice to fulfill his or her minimum wage for the workweek. 29 U.S.C. § 203(m).

…Thus, an employer may use a tip credit to determine the wage of a tipped employee if it: (1) pays a cash wage of at least $2.13 per hour; (2) informs its employees of the FLSA's tip credit provisions; (3) permits its employees to retain all their tips (except for permissible tip pooling); and (4) ensures that the cash wage plus the tip credit equal the minimum wage for the forty-hour workweek.[38]

Under the FLSA, employers of tipped employees may consider such tips as part of their wages, but employers must pay a direct wage of at least $2.13 per hour if they claim a "tip credit."[39] If an employer fails to pay the at least $2.13 per hour, it violates these provisions, and it is not entitled to claim a tip credit and must pay the full minimum wage rate.[40] Working for tips only violates the minimum wage provision of the FLSA.[41]

---

[38] 2014 U.S. Dist. LEXIS 105444 (D.C. Az. 2014) (Emphasis added) (citing *Roberts v. Apple Sauce, Inc.*, 945 F. Supp.2d 995, 1000 (N.D. Ind. 2013)
[39] *Id.*; *see also Perez v. Palermo Seafood, Inc.*, 548 F. Supp. 2d 1340, 1347 (S.D. Fla. 2008).
[40] *Azeez v. Ramaiah*, 2015 U.S. Dist. LEXIS 46574 (S.D.N.Y 2015).
[41] *Schaefer v. P.F. Chang China Bistro, Inc.*, 2014 U.S. Dist. LEXIS 105444 (D.C. Az. 2014).

The evidence in this case shows that Plaintiff was not paid any wages whatsoever during 2010 through 2012, and that Defendants simply kept the wages they were required to pay him during that period. Because the tip credit cannot be retroactively applied, it is not at issue for that time period. In 2013, when Defendants placed him on payroll, Defendants treated Plaintiff as a tipped employee, took advantage of the tip credit, and paid him $2.13 per hour. However, as will be discussed below, Defendants violated the tip credit during each week that Plaintiff worked by requiring him to pay "cleaning fees" to Defendants, and thereby failed to pay Plaintiff minimum wages "free and clear" as required by law.

**9.     Overtime Rate for Tipped Employees**

The law is clear that the "tip credit" allowance applies to minimum wages and not to overtime wages. *Azeez v. Ramaiah*, 2015 U.S. Dist. LEXIS 46574 (S.D.N.Y 2015):

> The FLSA also provides that for overtime work—work in excess of 40 hours per week—the employer must compensate the employee "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a). For employees who receive a regular minimum wage of $7.25 per hour, the applicable overtime rate is $10.88 per hour. For tipped employees, the applicable overtime rate is $5.76. *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 291 (S.D.N.Y. 2011) (explaining that the minimum tipped overtime wage is the regular overtime wage, $10.88 per hour, minus the maximum tip credit, $5.12 per hour).

The method for payment of overtime to a tipped employee has been set forth in simple terms by the District Court for the District of Columbia:

> For example, a tipped employee working forty-five hours in a week is entitled to $344.40 (($7.25 x 40) + ($10.88 x 5)). For the first forty hours, the employer only needs to pay $2.13 per hour. It would be incorrect, however, to multiply $2.13 by 1.5 to get the rate the employer must pay for the overtime hours. That would result in the employer paying only $3.20 for each overtime hour, which would mean the employer takes a tip credit of $7.68 ($10.88-$3.20). This amount is higher than the tip credit permitted by 29 U.S.C.A. § 203(m), which, even for overtime hours, is still the minimum wage less $2.13, or $5.12. Thus, for each hour worked over forty hours, the employer must pay $5.76 ($10.88-$5.12). Adding regular and overtime wages, the employer must pay a total of $114 (($2.13 x 40) + ($5.76 x 5)).[42]

## 10.    Blended Rates of Pay

Martin, the evidence will show, held two different positions: (1) He worked as a $50 per shift door man; and (2) He worked as a bartender who was paid, ostensibly, through the tip credit (although Martin will demonstrate that the tip credit is inapplicable).

"Where an employee works at two or more different jobs which have different hourly rates, the Wage and Hour Administrator has determined that the rate upon which overtime must be paid is the weighted average of the rates at which he

---

[42] *Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 8, 16 n.1 (D.D.C. 2010).

works. This is determined by computing the employee's entire compensation during the workweek from all such rates and dividing by the total number of hours worked at all jobs."[43]

In this case, Plaintiff will show that during most of his employment at BJ Roosters, he worked, on average, 43 hours per week. For 32 hours per week, he was either entitled to the minimum wage and received no wages whatsoever, or he was treated as a tipped employee and paid $2.13 plus the $5.12 tip credit for each hour worked. In either case, the relevant hourly rate for Plaintiff's bartending work is $7.25, the federal minimum wage. Plaintiff also worked approximately 11 hours per week as a doorman, for which Defendants paid him $100 total (i.e., $9.09 per hour).

For most of his employment, the weighted average of all of Plaintiff's hourly work at BJ Roosters would be calculated as follows:

32 hours per week x $7.25 per hour = $232

11 hours per week x $9.09 per hour = $100

$323 per week / 43 hours per week = $7.51 per hour blended average

---

[43] *Hodgson v. Penn Packing Co*., 335 F. Supp. 1015, 1021 (E.D. Pa. 1971); 29 C.F.R. § 778.115 (citing 29 C.F.R. 778.115).

Plaintiff estimates that he worked approximately 43 hours per week on average during the relevant portion of his employment. Based on a blended hourly rate of $7.51 per hour, and with 3 hours worked more than 40 in each week, Plaintiff would be entitled to a total of $22.53 per week for the overtime (1/2 time) premium in addition to the minimum wages as set out above.

**11.    Liquidated Damages**

Plaintiff contends that he is entitled to liquidated damages in an amount equal to his unpaid minimum wages and overtime pursuant to 29 U.S.C. § 216(b), which states:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

Section 16(b)'s use of the term "liquidated damages" is considered "something of a misnomer,"[44] because they "are not a penalty exacted by the law, but rather

---

[44] *Reich v. Southern New England Telecomms. Corp.*, 121 F.3d 58, 71 n.4 (2d Cir. 1997).

compensation to the employee occasioned by the delay in receiving wages due

caused by the employer's violation of the FLSA."[45]

Although § 216(b) provides for liquidated damages to a prevailing FSLA

plaintiff, 260 which provides the Court with the discretion to award no liquidated

damages if the employer establishes its "good faith":

> In any action . . . to recover unpaid minimum wages, unpaid
> overtime compensation, or liquidated damages, under the Fair
> Labor Standards Act of 1938 . . . ., if the employer shows to the
> satisfaction of the court that the act or omission giving rise to
> such action was in good faith and that he had reasonable
> grounds for believing that his act or omission was not a
> violation of the Fair Labor Standards Act of 1983 . . ., the court
> may, in its sound discretion, award no liquidated damages or
> award any amount thereof not to exceed the amount specified in
> section 216 of this title.'

Per the plain language of the statute, the determination of good faith is for the

"court" and not the "jury."

The applicable regulations with respect to the good faith defense are set forth in

29 C.F.R. § 790.13 et seq. "What constitutes good faith on the part of [an

employer] and whether [the employer] had reasonable ground for believing that

---

[45] *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999) (citing
*Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583–84, 62 S. Ct. 1216
(1942)).

[its] act or omission was not a violation of the [Act] are mixed questions of fact and law."[46]

As Magistrate Judge Scofield stated in *Smith v. Wynfield Dev. Co.*,

> The determination of whether an employer acted in good faith and had reasonable grounds for believing its act or omission was not a violation of the FLSA has both a subjective and objective component. *Dybach v. Florida Dep't of Corrections*, 942 F.2d 1562, 1566 (11th Cir. 1991). Subjective good faith means the employer has ***an honest intention to ascertain what the FLSA requires and to act in accordance*** with it. *Id.* Objective good faith means the employer had *reasonable grounds for believing its conduct comported with the FLSA*. *Id.* In addition, "[g]ood faith requires ***some duty to investigate potential liability*** under FLSA." *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 469 (5th Cir. 1979). An employer who knew or had reason to know that the FLSA applied cannot establish good faith as a defense. *Reeves v. International Tel. & Tel. Corp.,* 616 F.2d 1342, 1352-53 (5th Cir. 1980).[47]

In this case, liquidated damages are clear. Defendants paid Plaintiff no wages at all for approximately 2 years, and at all time during his employment they required that he pay fees to cover their operating expenses. Defendants can prove neither objective or subjective good faith under such circumstances.

---

[46] 29 C.F.R. § 790.22(c)

[47] 451 F. Supp. 2d 1327, 1337 (N.D. Ga. 2006) (Report and Recommendation adopted by Judge Thrash).

12.    **Attorney's Fees**

Section 216(b) of the FLSA provides that in any action successfully brought under its provisions, the "court" shall "allow a reasonable attorney's fee to be paid by the defendant, and cost of the action."[48] Because of this mandatory duty of the Court, the plain language of the statute removes this issue from the jury. If the Plaintiff prevails, the Court would decide the issue of attorney's fees.

13.    **Statute of Limitations**

The FLSA provides that actions are to be brought within 2 years after the cause of action "accrued" except that "a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."[49]

In *Morgan v. Family Dollar Stores*, the Eleventh Circuit reiterated the rule adopted in *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, and held: "[I]n order to prove willfulness, Plaintiffs must establish that [Defendant] knew, or showed reckless disregard for, the fact that its conduct was forbidden by the

_____

[48] *See Shelton v. Ervin*, 830 F.2d 182, 184 (11th Cir). 1987, aff'd, 835 f.2d 931 (11th Cir. 1988) (attorney's fees mandatory and integral part of judgment).
[49] 29 U.S.C. § 255 (a). In common usage, the word "willful" is considered synonomous with such words as "voluntary", "deliberate", and" intentional." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S. Ct. 1677 (1988).

FLSA."[50] "Reckless Disregard" is defined by the Code of Federal Regulations as the "failure to make adequate inquiry into whether conduct is in compliance with the Act."[51] An employer acts with reckless disregard for the Act if the employer's conduct is more than "merely negligent,"[52] and is blameworthy "if the employer should have inquired further into whether [his] conduct was in compliance with the Act, and failed to make adequate further inquiry,"[53] In other words, an employer does not commit a willful violation if he "acts unreasonably, but not recklessly, in determining [his] legal obligation" under the Act.[54]

The burden rests with the employee to "prove by a preponderance of the evidence" that her employer acted willfully.[55]

―――――――――――――

[50] 551 F.3d 1233, 1283 (11th Cir. Ala. 2008) (citing *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1162-1163 (11th Cir. Fla. 2008)) Citing 29 U.S.C. § 255(a) and *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S. Ct. 1677, 1681, 100 L. Ed. 2d 115 (1988)).

[51] 5 C.F.R. § 551.104; This regulation applies by its terms to "Pay Administration Under the Fair Labor Standards Act, General Provisions" for Civil Service Regulations under the Office of Personnel Management. The Court in *Alvarez,* however, applied this definition in the context of a non-governmental FLSA action. *Alvarez, See Alvarez*, 515 F.3d at 1162.

[52] *McLaughlin*, 486 U.S. at 133, 108 S. Ct. at 1681.

[53] 29 C.F.R. § 578.3(c)(3); *see* 5 C.F.R. § 551.104.

[54] *McLaughlin*, 486 U.S. at 135 n.13, 108 S. Ct. at 1682 n.13.

[55] *Davila v. Menendez*, 717 F.3d 1179, 1184–1185  (11th Cir. 2013) (citing *Alvarez*, 515 F.3d t 1162–63 (11th Cir. 2008); *see also Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1274 (11th Cir. 2008).

This 10th day of November 2015.

Respectfully submitted,

**DELONG, CALDWELL, BRIDGERS,
FITZPATRICK & BENJAMIN, LLC**

/s/Charles R. Bridgers
Georgia Bar No 080791.
3100 Centennial Tower                    Matthew W. Herrington
101 Marietta Street                      Ga. Bar No. 275411
Atlanta, GA 30303                        Kevin D. Fitzpatrick, Jr.
(404) 979-3150                           Ga. Bar No. 262375
(404) 979-3170 (f)
matthew.herrington@dcbflegal.com
charlesbridgers@dcbflegal.com            **Counsel for Plaintiff**
kevin.fitzpatrick@dcbflegal.com

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**RICHARD MARTIN,**

       **Plaintiff,**

    **vs.**

**JOBO'S, INC., d/b/a BJ Roosters,
ROBERT HAMILL, and JOHN
MOLINARI,**

      **Defendants.**

Civil Action No. 1:13-cv-04242-RWS

## CERTIFICATE OF SERVICE

I hereby certify that I have this day electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

    This 10th day of November 2015.


/s/Charles R. Bridgers
Georgia Bar No 080791