## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

RICHARD MARTIN,

        Plaintiff,

  vs.

JOBO'S, INC., d/b/a BJ Roosters,
ROBERT HAMILL, and JOHN
MOLINARI,

        Defendants.

Civil Action

File No. 1:13-cv-04242-RWS

## DEFENDANTS' RESPONSE TO
## PLAINTIFF'S TRIAL BRIEF

Defendants Jobo's, Inc., Robert Hamill, and John Molinari, by and through counsel, file this Response to Plaintiff Richard Martin's trial brief (Doc. 41), as follows:

A.    Issues to be Decided: "Kickback" vs. "Tip Pool."

Defendants do not dispute Plaintiff's characterization as to three of the four questions to be decided by the Court. However, as to the question of "[w]hether 'cleaning fees' paid by Plaintiff and other BJ Roosters bartenders were improper 'kickbacks' (29 C.F.R. 531.35) that violated the FLSA's 'free and clear' requirement and rendered the FLSA's tip credit provision inapplicable," (Doc. 41 at 2), Defendants dispute the characterization of the payments.

Defendants submit that the $5 per shift paid by the Plaintiff to another tipped employee for night shift cleanup was legitimate "tip out," since it was paid, voluntarily, by tipped employees (bartenders and bar backs) to one of their number who agreed to perform cleanup duties for the other bartenders on that shift. Plaintiff worked primarily as the day-time bartender. The day-time bartender did ***not*** tip-out, but rather was responsible for keeping the bar neat and orderly during the day. During the evening, the "night bartenders" were responsible for cleaning the bar and restocking it after their shift. At one point in time, long before Plaintiff began working at the bar, the night bartenders – who did not like staying after their shift had ended and cleaning the bar area – decided to each pay David Havener $5.00 per night to do all of the cleaning. This arrangement to pay Mr. Havener $5.00 per night shift for cleanup was arrived at consensually among these tipped employees. Plaintiffs have no evidence that this payment was made at the request or demand of Defendants, or actually paid to them. Thus, distinct from a "kickback," this payment was in fact a legitimate tip-out to another tipped employee. A similar arrangement would be a tip-out made by a wait-staff to a busboy, who clears and cleans tables. Accordingly, the question to be decided by the Court is whether this was a legitimate tip-out, and not whether the payment constituted an illegal "kickback." See *Cumbie v. Woody Woo, Inc.,* 596 F.3d 577, 581 (9th Cir. 2010).

Assuming, *arguendo¸* that the "cleaning fee" was mandatory, the "cleaning fee" was given to one of the bartenders who was a tipped employee. The cleaning of the bar area is a function of the bartenders, indeed, they were performing this task until one of the bartenders agreed to do that function alone. The Sixth Circuit in *Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294, 303 - 304 (6th Cir. 1998) dealt with a mandatory tip pool among tipped employees and held:

> Additionally, Department of Labor regulations and court decisions interpreting subsection 203(m) of the FLSA recognize that ***mandatory tip-out provisions*** are permissible forms of tip sharing. *See* 29 C.F.R. § 531.54 (1996) (distinguishing between "[w]here employees practice *tip splitting,* as where waiters give a portion of their tips to busboys" from voluntary **tip pooling**—"whereby the employer redistributes the tips to the employees upon some basis to which they have mutually agreed among themselves"); *Continental Cuisine,* 751 F.Supp. at 801 (upholding **tip pool** where "[w]aiters and waitresses ... are required to make ... contributions"); *Bonham,* 476 F.Supp. at 101–02 (noting that "mandatory pooling with busboys is not prohibited by Section 203(m)" and citing 29 C.F.R. § 531.54). [Emphasis added.]

B.    Whether John Molinari Was an "Employer."

Defendants disagree with Plaintiff's statement of the law concerning whether Defendant John Molinari was an "employer" within the meaning of the Fair Labor Standards Act (FLSA). Plaintiff's test is too simplistic: he argues that Defendant Molinari's ownership interest in the bar suffices to make him personally liable as an employer. The Eleventh Circuit has squarely rejected such reasoning. In *Patel v. Wargo*, 803 F.2d 632 (11th Cir.1986), the Court faced this question and concluded that ownership, without much more, is not enough. The plaintiffs in

*Wargo*, healthcare workers employed by a drug and alcohol rehabilitation center, sought back pay under the FLSA, and sued not only the corporation that employed them but also a trust that owned the land upon which the center was located and the principal shareholder of both the center and the trust.  The District Court had found that the plaintiff was entitled to back pay, but also held that neither the land-owning trust nor the principal shareholder were liable because neither was the plaintiff's employer.  The Court of Appeals affirmed, rejecting the plaintiff's argument that these other entities were joint employers by virtue of their relationships or that they were jointly liable because they constituted an "enterprise."  The plaintiff in *Wargo* appears to have made the same error that Plaintiff has made in this case:  that of confusing enterprise analysis with the analysis of who is liable as an employer under the FLSA.  The Court of Appeals explained:

> [E]nterprise analysis is different from the analysis of who is liable under the FLSA. The finding of an enterprise is relevant only to the issue of coverage. Liability is based on the existence of an employer-employee relationship. In the instant case, the district court found that Investment, Inc. was not an employer of Patel within the meaning of the FLSA. There is no suggestion that Investment, Inc. was responsible for the day-to-day operations of Pine Wood or had anything to do with the employees of Pine Wood. Therefore, we affirm the judgment of the district court on this issue.

*Wargo*, 803 F.2d at 637.  See also *Sanford-Orlando Kennel Club,* 515 F.3d at 1160 (company president not liable under FLSA as employer because he lacked

4

operational control of significant aspects of the company's day-to-day functions, including compensation of employees or other matters related to employees).

C.     Recordkeeping and Burden of Proof.

Defendants disagree with Plaintiff's characterization of the burden of proof and the impact of recordkeeping.  First, it is Plaintiff's ultimate burden to prove that he was employed, and the dates he was employed.  Second, he cannot carry that burden simply by pointing to a *lack* of employment records.  The FLSA requires an employer to maintain records pertaining to employees.  However, that does not mean that a putative employee has carried that burden simply if he shows that the employer has failed to maintain proper records, because a lack of records also is consistent with a lack of employment.  The dates of Plaintiff's employment are disputed, and it will be up to the Court to decide.  Defendants never created any personnel or payroll records for Plaintiff during periods when they deny he was an employee.

In *Anderson v. Mount Clemens Pottery,* 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), the Supreme Court authorized a burden-shifting scheme designed to facilitate the ability of plaintiffs to prove an FLSA violation where the employer failed to maintain proper records (such as how many hours its employees worked and the amount of pay).  *Id.* at 686–88, 66 S.Ct. at 1192.  To prevent workers from being penalized by the employer's failure to keep adequate records,

the Supreme Court provided that plaintiffs could meet their burden of proof so long as they "prove[ ] that [they have] in fact performed work for which [they were] improperly compensated" and "produce [ ] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* at 687, 66 S.Ct. at 1192.  This is where Plaintiff Martin will find a challenge.  He must prove, first, that he performed work for which he was not compensated – i.e., that he did in fact perform work as a bartender during the period in dispute – and only after he has shown that he did such work can he ask the Court to draw any inference from Defendants' records or lack thereof.

Plaintiff cannot prove that he was employed based simply on an absence of records.  Rather, Courts can and do infer that no employment relationship existed where the defendant has no records pertaining to a plaintiff's employment.   In *Villareal v. Woodman*, 113 F.3d 202, 205 (11th Cir. 1997), the plaintiff claimed that he was due wages for his services as a translator while he was detained in prison.  The Court applied the economic reality test.  *Villareal*, 113 F.3d at 205, citing *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983).  The Court noted that many courts had denied prisoners' claims for pay, but also noted that the lack of employment records was a component of the economic reality test that weighed against finding that an employment relationship existed.

The Eleventh Circuit applied the "economic reality" test in *Freeman v. Key Largo Volunteer Fire and Rescue Dept.*, 494 Fed.Appx. 940, 944 (11th Cir. 2012), dismissing the claim of a volunteer firefighter, in part, because the plaintiff did not allege, and the putative employer did not provide, any employment records. Here, where Defendants acknowledge that they had no employment records for Plaintiff Martin during the period when they maintain he was not employed, that evidence should weigh heavily in favor of finding that no employment relationship existed during that period.

D.    The Cleaning Fee Was Not A "Kickback."

As explained above, Defendants dispute Plaintiff's characterization of the $5 per night shift cleaning fee, and maintain instead that it was a voluntary and consensual element of a pooling arrangement among tipped employees. As such, it does not (as Plaintiffs argue) destroy the tip credit, entitling Plaintiff to full minimum wage at $7.25/hour rather than the tipped employee minimum of $2.13. First, there is no evidence that Defendants ever demanded the nightly fee, or applied that amount to meet the minimum wage. Second, Defendants disagree strongly with Plaintiff's contention that any deduction "destroys" the tip credit entirely, and would deprive Defendant of credit for any wages paid. (See Doc. 41 at 10, n.31.) Thus Plaintiff's contention that he is due not only the full minimum wage for hours worked, *plus* an additional $5 per hour for each of the night shifts

when he says he paid the contested cleaning fee, is too much:  the FLSA does not empower him to recover *more* than minimum wage for nonovertime hours worked.

Plaintiff argues that to be fully compensated, Defendants must pay him not only the full minimum wage for all time worked, but also reimburse him for any fees collected, by which he means the $5 night shift cleaning fee that came out of his tip earnings.  (Doc. 41 at 10-11, FN 33-34.)  In support, Plaintiff cites two District Court decisions from other jurisdictions:  *Reich v. Priba Corp.*, 890 F. Supp. 586, 595 (N.D. Tex. 1995), and *Hart v. Rick's Cabaret Int'l, Inc.*, 60 F. Supp. 3d 447, 477 (S.D.N.Y. 2014).  Unfortunately, neither supports his claim.

In *Priba*, the court found that the employer's practice of collecting a tip out fee violated the FLSA "because the deduction further reduces the entertainers' wages below the minimum wage."  *Priba*, 890 F. Supp. at 595, citing *Reich v. Circle C. Investments,* 998 F.2d 324, 330 (5th Cir. 1993).  The Court concluded that "[t]o fully compensate the entertainers in the amounts required by the FLSA, Cabaret Royale must pay them the full minimum wage for all time worked during the limitations period."  *Id*.  While the Court also ordered the club to return all tip-out fees collected from the entertainers, it gave no legal authority for that portion of its ruling.

In *Hart*, the court found that although there was ample evidence in that case that the plaintiffs had been required to pay management a daily tip-out, fact issues

precluded granting summary judgment in their favor on their claim to be reimbursed for those amounts. *Hart,* 60 F Supp. 3d at 476. The court denied the plaintiffs' motion for summary judgment on their claim for reimbursement of tip-outs in addition to minimum wage. *Id.* at 477.

Finally, Defendants paid Plaintiff more than $5.00 a week above the required $2.13 an hour. Thus, the payment of $5.00 a week did not cut the Plaintiff below minimum wage. Plaintiff has admitted during his employment receiving an additional $100.00 a week in addition to the $2.13 an hour paid during the admitted period of employment. Defendants will show that the door position was a tipped position in accordance with section 3(t) and his total cash wages paid every week far exceeded the required $2.13 an hour.

Accordingly, there is no legal authority to support Plaintiff's claim that he should be reimbursed the $5 nightly cleaning fee (which Defendants still maintain was part of a consensual tip-pooling arrangement) in addition to minimum wage for the hours he can prove he worked.

E.    <u>Statute of Limitations/Third Year Liability</u>.

If, as Defendants contend, the Court finds that Plaintiff was not employed outside the period during which Defendants concede that he was, the issue of third-year liability will not arise. However, if the Court concludes otherwise, it will also

have to decide whether the FLSA's 2- or 3-year statute of limitations period applies.

For third-year liability to attach, it does not suffice simply to show that Defendants knew the FLSA was "in the picture."  "[T]o prove willfulness, Plaintiffs must establish that [Defendant] knew, or showed reckless disregard for, the fact that its conduct was forbidden by the FLSA."  *Sanford-Orlando Kennel Club, Inc.*, 515 F.3d at 1162-1163.  In order to prove a willful violation, Plaintiff must prove that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA.]"  *See McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115, (1988) (quoting *Trans World Airlines v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)).  In other words, something more than mere negligence must be proved.

Respectfully submitted this 12th of November, 2015.


/s/ *J. Larry Stine*
J. Larry Stine
Ga. Bar No.: 682555
Elizabeth K. Dorminey
Ga. Bar No.: 225935

WIMBERLY, LAWSON, STECKEL,
  SCHNEIDER & STINE, P.C.
Suite 400, Lenox Towers
3400 Peachtree Road, N.E.
Atlanta, Georgia  30326                    *Attorneys for Defendants*
Phone:      (404) 365-0900
Fax:          (404) 261-3707
Email:      jls@wimlaw.com
                bdorminy@bellsouth.net

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rules 5.1(C) and 7.1(D), I certify that the foregoing pleading is typewritten using Times New Roman font, fourteen-point type.

DATED this 12th day of November, 2015.

*/s/ J. Larry Stine*
J. Larry Stine
Bar No. 682555
*Counsel for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

RICHARD MARTIN,

      Plaintiff,

  vs.

JOBO'S, INC., d/b/a BJ Roosters,
ROBERT HAMILL, and JOHN
MOLINARI,

      Defendants.

Civil Action

File No. 1:13-cv-04242-RWS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing **DEFENDANTS' RESPONSE TO PLAINTIFF'S TRIAL BRIEF** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Charles R. Bridgers
Kevin D. Fitzpatrick, Jr.
Matthew W. Herrington
DELONG CALDWELL BRIDGERS & FITZPATRICK, LLC

This 12th day of November, 2015.

/s/ *J. Larry Stine*

J. Larry Stine
Ga. Bar No.: 682555
Elizabeth K. Dorminey
Ga. Bar No.: 225935

WIMBERLY, LAWSON, STECKEL,
SCHNEIDER & STINE, P.C.
Suite 400, Lenox Towers
3400 Peachtree Road, N.E.
Atlanta, Georgia 30326

*Attorneys for Defendants*